## SCHOOL BOARD OF DADE COUNTY v MARSHALL

Case No. 86-4470

State of Florida, Division of Administrative Hearings

April 6, 1988

### APPEARANCES OF COUNSEL

**Frank R. Harder,** for petitioner.

**William DuFresne,** for respondent.

### OPINION OF THE COURT

ELLA JANE P. DAVIS, Hearing Officer.

### RECOMMENDED ORDER

Upon due notice, formal hearing was held in *School Board of Dade County, Florida v Marshall,* DOAH Case No. 86-4470 on October 27-28, 1987, in Miami, Florida, before the undersigned duly assigned Hearing Officer of the Division of Administrative Hearings, Ella Jane P. Davis.

### BACKGROUND AND PROCEDURE

Petitioner School Board had admitted in evidence 34 exhibits and

presented the oral testimony of Joan Hanley, Phyllis Cohen, Cynthia Muller, Herbert Holmberg, Charles Sherwood, Nancy Bily, and Desmond Patrick Gray. Respondent had identified 11 exhibits and 10 were admitted in evidence. Respondent presented the oral testimony of Louvina Stewart, Marcellin Sullivan, Sandra Bonner, and Wylamerle Marshall, and testified on his own behalf.

The School Board's Notice of Charges does not allege any improper conduct before January 10, 1985, and in the course of formal hearing, a number of evidentiary rulings were made to exclude testimony regarding matters precedent to that date. Ruling was reserved for inclusion in this recommended order with regard to testimony bearing on negotiations which were partly in the nature of settlement. (TRII p.35) Upon review, reflection and research, it is ordered that the testimony of Dr. Patrick Gray immediately preceding that page in the transcript was admissible upon other grounds, and said testimony is deemed admitted; the School Board's motion to strike same is denied and the testimony will not be struck. However, the undersigned has not considered said testimony "to prove liability or absence of liability." See Section 90.408, *Florida Statutes.*

In November 1987, the Department of Education, Education Practices Commission brought similar charges as those raised by the School Board against Respondent in *Department of Education Practices Commission v Marshall,* DOAH Case No. 87-4785.

Transcript of the October 27-28, 1987 formal hearing was not filed by the School Board until December 28, 1987.

By stipulation of the parties, on January 25, 1988, an order was entered by Hearing Officer Donald R. Alexander consolidating the two causes. Also by stipulation, DOAH Case No. 87-4785 was submitted for entry of a recommended order by the undersigned upon the transcript of the proceedings of October 27-28, 1987 in DOAH Case No. 86-4470, the entire record therein, and a deposition of Patrick Gray, a witness in the original proceedings, which supplemental deposition was taken January 15, 1988 and filed with the Division of Administrative Hearings on February 1, 1988. The supplemental deposition has not been considered in DOAH Case No. 86-4470.

The parties in DOAH Case No. 87-4785 filed proposed findings of fact, since that right had not been waived by them. The parties to DOAH Case No. 86-4470, who had previously waived the opportunity to file post hearing proposals, were also encouraged to file them anyway due to the significant lapse of time between formal hearing and the preparation of the recommended order. Petitioner Department of

218

Education filed a single set of proposed findings of fact and conclusions of law directed to both cases and Petitioner School Board relied thereon. Respondent filed a single set of proposed findings of fact and conclusions of law directed to both cases. These respective proposed findings of fact have been ruled upon in the appendix to this recommended order, pursuant to section 120.59(2), *Florida Statutes.*

## ISSUE

Whether or not Respondent is subject to dismissal by the School Board of Dade County, Florida, for incompetency based upon inefficiency, for insubordination based upon a constant or continuing intentional refusal to obey a direct order, reasonable in nature and given by and with proper authority, and for misconduct based upon his failure to make reasonable efforts to protect students from harmful conditions and/or to exercise an educator's primary professional concern for the student and to exercise the best professional judgment and integrity as a result of specific allegations of fact for the date, June 6, 1986 contained in the Formal Notice of charges filed January 14, 1987.

## FINDINGS OF FACT

1. At all times material, Petitioner School Board of Dade County, Florida, was a duly constituted School Board established by Article IX, Florida Constitution, charged with the duty to operate, control, and supervise all free public schools within its school district, pursuant to Article IX, Florida Constitution, Section 230.03, *Florida Statutes.*

2. At all times material, Respondent Vaughan Marshall held teaching certificate no. 463523, and was employed by the School Board of Dade County, Florida, as a second grade teacher at Perrine Elementary School (Perrine). By their respective post-hearing proposals the parties appear to concur that § 231.36(4)(c), *Florida Statutes* covering continuing contract teachers, is applicable to Respondent.

3. The Respondent's teaching certificate covers the areas of elementary education and emotionally disturbed.

4. Respondent only taught part of the 1984-1985 School Year, being assigned to Perrine on November 28, 1984. For that year, he was assigned to a Title I, second grade class of only ten or eleven students. Title I students are those working below a stipulated level, possibly as much as two years below their standard grade level by age. The program stresses reading and other basic skills.

5. On January 10, 1985, Respondent was formally observed by Assistant Principal Herbert Holmberg to be deficient in the area of

techniques of instruction and assessment techniques. Specifically, the Respondent's clarification of questions presented by students and his system of assessing students' performance for that period was inadequate.

6. On seven informal "views" of Respondent conducted over two days, February 25 and 18, 1985, Mr. Holmberg noted that Respondent was always seated at his desk, either working on paperwork or reading. Mr. Holmberg concluded this evidenced poor teaching practices.

7. Upon a subsequent and formal observation by Mr. Holmberg on March 27, 1985, Respondent was again observed to be deficiency in the area of assessment techniques. Specifically, students' grades were indiscriminately placed in Respondent's grade book without correlation between the dates on the papers and the dates registered in the grade book.

8. Mr. Holmberg was not aware that between January 1985 and March 1985, Respondent had developed an acute hearing problem which eventually resulted in ear surgery, and that during that period of time, Respondent was following a physician's instructions not to be on his feet due to balance problems. Holmberg's analysis of Respondent's performance on each of these occasions was therefore somewhat colored by his misunderstanding of the reasons for Respondent's sedentary situation. However, Holmberg's view of Respondent's *teaching* techniques do not invalidate Holmberg's professional analysis that Respondent's use of his grade book and other *assessment* techniques was deficient at the time of his two formal evaluations.

9. At mid-day on April 29, 1985, Principal Joan Hanley observed a Title I second grade reading lesson conducted by Respondent. Principal Hanley determined that Respondent's performance on that date was deficient in the areas of techniques of instruction, preparation and planning, knowledge of subject matter, and classroom management. Specifically, she found Respondent's lesson plan to be inadequately designed for the class he was teaching and inadequately put into practice by him.

10. On June 12, 1985, Respondent was formally observed during a mid-morning reading lesson in what is commonly called an "external observation." This method of requiring observation by two evaluators, one of whom is an outside evaluator, is primarily to ensure that review of a teacher is done objectively. The external observer on this occasion was Phyllis Cohen, Director, South Area Office Dade County Public Schools. The internal observer was again Principal Hanley. Principal Hanley found Respondent's performance deficient in the areas of

techniques of instruction and assessment techniques. Specifically, Respondent used only one teaching technique. Also, all reading grades were based on oral assignments for an extended period of time, contrary to county policy which requires grades based on both oral and written assignments. Mrs. Cohen also rated Respondent deficient in assessment techniques, because she found the diagnostic data for five out of eleven students was unavailable; she did not down-grade him on techniques of instruction. Although the two observers in an external evaluation observe simultaneously, they do not consult each other until after the observation is completed. Although the respective observations of the two evaluators were not identical on June 12, 1985, they are substantially similar as described *supra,* and I find no lack of credibility in either witness.

11. A prescriptive timetable was set for the next school year, and Respondent was rehired for the 1985-1986 school year. He taught a regular second grade class that year.

12. On October 14, 1985, Respondent was formally observed during a full-sized regular second grade class by Mr. Holmberg, who rated Respondent deficient in all six of the areas subject to being rated at that time: preparation and planning, knowledge of the subject matter, classroom management, techniques of instruction, assessment techniques, and teacher-student relationships. There was immediate off-task behavior by students, failure of Respondent to immediately notice Holmberg's presence, and the reading experience project was improperly directed to only a few of the students. The lesson plans were not followed by Respondent and he offered to change plans to conform to what he had been actually teaching. It was Holmberg's view that nothing had been taught to the children by Respondent during his observation. The Respondent's explanation of nervousness and excitement does not mitigate these deficiencies.

13. On November 25, 1985, Principal Hanley formally observed a mid-morning regular second grade class taught by Respondent. Respondent was again rated deficient in preparation and planning, classroom management, and techniques of instruction. The areas of classroom management and preparation and planning were found deficient because the reading class was short by 12 minutes of meeting the hour of reading which was required and the 12 minutes were not otherwise filled with effective teaching. Respondent defended the 12 minute shortfall of reading time by stating that Ms. Muller had suggested cutting short lessons under certain circumstances which were present on that day. Ms. Muller essentially confirms that such a shortfall was encouraged by her under such circumstances. However, the time was

not apparently effectively used, either. Additionally, classroom order was not maintained by Respondent. Also, as to techniques of instruction, Mrs. Hanley felt no teaching of reading had occurred. Respondent failed to maintain continuity of lesson to lesson, to instruct new skills, to initiate student follow-up, or to provide for informal assessment. Mrs. Hanley also reviewed math papers which did not comport with good teaching practice and standards. One such example was a paper to which Respondent has assigned an A+ but which had 19 errors out of 36 problems attempted by the student.

14. On December 13, 1985, Charles Sherwood, Director of the Department of Basic Skills, Dade County Public Schools, also observed Respondent. His assessment showed Respondent deficient in subject knowledge, techniques of instruction, and teacher-student relationships. This showed deficiencies in three of the six areas assessed. Antonyms, which in fact are words meaning the opposite of each other, were defined by Respondent as "words that meant the same but are spelled differently." In his blackboard illustrations of antonyms, Respondent exhibited several errors of grammar and punctuation.

15. On March 17, 1986, another external observation was conducted of Respondent for a mid-afternoon regular second grade class reading session. Mrs. Hanley and Mrs. Cohen again were the participating observers. Again, their independent observations are significantly similar in that they found Respondent deficient in the areas of preparation and planning, classroom management, and techniques of instruction. His lesson plan was deficient, the instructional time was unstructured, and the lesson delivery was inadequate. Mrs. Cohen testified that on this date Respondent's performance evidence a vast deterioration over her preceding observation on June 12, 1985. She felt that on this occasion, the children were deprived of a minimal educational experience.

16. On May 29, 1986, Principal Hanley formally observed Respondent and rated him deficient in the areas of knowledge of subject matter, techniques of instruction, assessment techniques, and teacher-student relationships. Respondent's lesson on vowel sounds was incorrect, students were talking and off-task intermittently, and all the students' assessment folders were marked as their having mastered second grade skills when Hanley's observation of their actual performance was clearly to the contrary.

17. Respondent was rated on his annual evaluation for the 1985-1986 school year as unacceptable overall and deficient in the component areas of knowledge of subject matter, techniques of instruction, assess-

222

ment techniques, and professional responsibility. He was not recommended by Principal Hanley for continued employment. Mrs. Cohen concurred in that recommendation. Mrs. Hanley considered Respondent to be irremediable.

18. At formal hearing, Mrs. Cohen and Dr. Patrick Gray each assessed Respondent as not professionally competent for employment by the Dade County School Board.

19. The allegations that on June 6, 1986, Respondent failed to make reasonable efforts to protect his students under his supervision, when two second graders in Respondent's class were the victims of an assault and/or battery and/or attempted sexual battery were not sustained by competent substantial evidence, let alone clear and convincing evidence. Respondent may have been inattentive or speaking with someone else or doing his grade-book on the playground when some untoward activity occurred between some children, but at most, Petitioner only established that Respondent was not watching every child's activities for approximately 5 minutes. No direct credible evidence was presented to show that a battery, sexual or otherwise, occurred during this period of time. All evidence of any illicit activity among the children is uncorroborated hearsay evidence.

20. Respondent testified that his 1985-1986 regular second grade class students all achieved eighty per cent or above on the standardized SAT skills test. Although this flat statement is uncorroborated, it is also unrefused. However, I accept Dr. Patrick Gray's expert opinion that there is not a sufficient statistical significance to allow a fair and reliable assessment of a teacher's performance to be derived from a single set of achievement test scores of his students. There are too many variables as to the students' respective histories, learning capacities, and other learning factors, regardless of what goes on in the classroom. Without access to these particular children's scores on a similar test administered prior to their exposure to Respondent's teaching methods, no valid assessment of Respondent's impact as a teacher on these students' skills can be made merely from their 1985-1986 SAT scores. Therefore, Respondent's inference that the SAT scores of his students are a clear indicator of his teaching competence cannot be adopted.

21. Cynthia Muller, Primary Education Specialist, worked with Respondent on eighteen separate occasions between February 16, 1985 and April 14, 1986. Principal Hanley gave Muller itemized lists of categories she wanted Muller to cover with Respondent. Hanley also brought in a second grade teacher Respondent could observe and

223

introduced Respondent to the County Reading Specialist to assist him. Dr. Sherwood sent Respondent help in the former of a Teacher on Special Assignment. Although Respondent met some prescriptive time-liness, he would thereafter not pass subsequent evaluations as set out *supra.*

22. The proof of insubordination is not convincing. Respondent apparently was chronically tardy and had considerable trouble with keeping adequate records. These problems are more in the nature of inability than unwillingness to follow orders and are certainly not a *refusal* to follow orders. If anything, they contribute to an assessment of incompetency and do not support a finding of simple or gross insubordination.

## CONCLUSIONS OF LAW

1. The Division of Administrative Hearing has jurisdiction over the subject matter hereof and the parties hereto. See, Section 120.57(1), *Florida Statutes.*

2. Section 231.36(4)(c), *Florida Statutes,* provides in pertinent part: that any member of an instructional staff may be suspended or dismissed at any time during the school year; however, the charges against him must be based upon immorality, misconduct in office, incompetency, gross insubordination, willful neglect of duty, drunken-ness, or conviction of a crime involving moral turpitude.

3. Rule 6B-4.009, *Florida Administrative Code,* provides criteria for suspension and dismissal of instructional personnel:

1. Incompetency is defined as inability or lack of fitness to discharge the required duty as a result of inefficiency or incapacity . . .

(a) Inefficiency (1) repeated failure to perform duties prescribed by law (Section 231.09, *Florida Statutes;* (2) Repeated failure on the part of a teacher to communicate or relate to children in a classroom to such an extent the pupils are deprived of minimum educational experience; . . .

4. Further, Section 231.09, *Florida Statutes,* provides that instruc-tional personnel of the public school system are required, *inter alia,* to teach efficiently and faithfully, used prescribed materials and methods, and keep records.

5. In order for Respondent to be dismissed by the School Board is must be shown that the Respondent was incompetent to teach or guilty of specified misconduct.

6. The allegations of misconduct in office, based upon the June 6,

224

1985 alleged assault, and/or batter, and/or sexual battery, and the allegations of gross insubordination cannot be sustained since there was insufficient credible evidence as to both charges.

7. The charge of incompetency has been proven by clear and convincing evidence as discussed in *Ferris v Turlington,* 510 So.2d 292 (Fla. 1987).

## *RECOMMENDATION*

That the School Board of Dade County enter a final order ratifying its dismissal of Respondent from its employment.

DONE and RECOMMENDED this 6th day of April, 1988, at Tallahassee, Florida.